UNITED STATES of America

v.

ONE CARTON CONTAINING QUANTITY OF PAPERBACK BOOKS, formerly located on the premises of Ryder Truck Lines, 2300 Jonesboro Road, S.E., Atlanta, Georgia, now located in the custody of the Clerk of the United States District Court, Atlanta, Georgia,

Civ. A. No. 14594.

United States District Court,
N. D. Georgia,
Atlanta Division.

Feb. 25, 1971.

958

John W. Stokes, Jr., U. S. Atty., Northern District of Georgia, Atlanta, Ga., for plaintiff.

Robert E. Smith, Towson, Md., D. Freeman Hutton, Atlanta, Ga., for defendant.

## ORDER

MOYE, District Judge.

On January 8, 1971, the United States Attorney for the Northern District of Georgia petitioned this Court for an order to show cause why a search warrant should not be executed against a carton of paperback books referred to in the affidavit of Special Agent John J. Langsfeld, Federal Bureau of Investigation, attached thereto, which carton was then in the possession of Ryder Truck Lines, 2300 Jonesboro Road, S.E., Atlanta, Georgia. The carton showed Piedmont Book Distributors of Charlotte, North Carolina, as consignor and Peachtree National Distributors, Inc., 240 Luckie Street, N.W., Atlanta, Georgia, as consignee, with Ryder Truck Lines as the common carrier.

The affidavit of Agent Langsfeld showed that the carton had become broken in transit and delivery thereof rejected by Peachtree National Distributors, Inc. Because the carton was broken, it was returned by Peachtree National Distributors to the common carrier, where one of the latter's agents observed that the contents contained books with "a number of obscene photographs of sexual activity between nude men and women", the sexual activity being described as numerous sexual acts portraying not only normal sexual intercourse but also other types of sexual activity, some of which would constitute crimes against the laws of the State of Georgia (Georgia Code § 26–2002). On January 8, 1971, this Court issued its order setting a hearing for January 13, 1971, on the petition, and temporarily restraining Ryder Truck Lines, Piedmont Book Distributors and Peachtree National Distributors, Inc., "from disposing of, destroying, altering * * *

said carton and contents" so as to "delay or affect these proceedings," and further ordering the party in possession of such carton of books to produce the same at the hearing.

The show cause order was served upon Piedmont Book Distributors on January 12, 1971, and upon Peachtree National Distributors, Inc., on January 13, 1971, about two hours before the hearing.

At the hearing on January 13, 1971, Ryder Truck Lines, by its agent Mr. Leo Suggs, produced in Court the carton referred to and the defendants Piedmont Book Distributors and Peachtree National Distributors, Inc., appeared by counsel. Mr. Richard H. Still, Jr., Assistant United States Attorney, was present representing the government; and also present was the FBI agent, John J. Langsfeld.

Mr. Suggs testified with respect to the receipt in Atlanta of the broken carton; the admitted delivery to Peachtree National Distributors, Inc.; its refusal and return to Ryder Truck Lines; his observation of the photographs referred to hereinabove; and communication with the FBI. Agent Langsfeld testified that he proceeded to the premises of the Ryder Truck Lines; observed the book which was shown to him by Mr. Suggs; that it contained photographs portraying the sexual activity hereinabove referred to as well as textual matter; that, following his examination, the book (which bore the title "Queer Couples") was returned to the broken carton.

Mr. Suggs and Mr. Langsfeld were both cross-examined by Mr. Robert E. Smith, counsel for Piedmont Book Distributors and Peachtree National Distributors, Inc., but no evidence was introduced on their behalf.

At the hearing, it was agreed by Piedmont Book Distributors and Peachtree National Distributors, Inc., that they would make no claims of prejudice with respect to the time required to process this matter subsequent to the commencement of the hearing on January 13, 1971, and, at the request of all parties, the Court allowed them the opportunity to submit briefs. The brief of Piedmont Book Distributors and Peachtree National Distributors, Inc., was served on January 26, 1971; and that of the government on February 8, 1971.

At the request of all parties, the Court held a further hearing on February 23, 1971. At that hearing Mr. Suggs and Mr. Langsfeld were again present and the government was represented by Mr. Still as well as by Mr. William C. McCorriston of the Criminal Division of the Department of Justice. Mr. Robert E. Smith was present again representing respondents Piedmont Book Distributors and Peachtree National Distributors, Inc.

At the opening of the hearing on February 23, 1971, the Court announced its concern that, at the earlier hearing, it may have unduly restricted the right of counsel for Piedmont Book Distributors and Peachtree National Distributors, Inc., to cross-examine Mr. Suggs and Mr. Langsfeld and indicated that they were again present in Court for the purpose of such cross-examination if counsel so desired. This offer was declined, Mr. Smith stating to the Court that he did not desire further cross-examination in view of the Court's announcement that it intended to treat the hearing on this matter as one for the determination of "probable cause" rather than for a definitive determination of obscenity *vel non*. At that point, the Court stated it to be his tentative opinion that "probable cause" is the correct standard to be applied under the circumstances here present, but nevertheless the Court would hear from counsel with respect to any contrary contention.

No further evidence was introduced by any party at the hearing on February 23, 1971.

Counsel for Piedmont and Peachtree took the position that the search warrant should not be issued because this *"ad hoc"* proceeding is not a proper one for the determination of the issues involved, and because the government had failed to introduce any affirmative evidence of the alleged obscenity of the pa-

perback book sought to be the basis of this search warrant, *i.e.,* (1) no evidence that the publication considered as a whole, applying contemporary community standards, has a predominate appeal to prurient interests, that is, a shameful or morbid interest in nudity, sex or excretion, of the average adult, (2) that it is utterly without redeeming social value, all probable uses considered, and (3) that it goes substantially beyond contemporary limits of candor is describing or representing such matters.

## FINDINGS OF FACT

■ While the Court obviously cannot definitively assess the publication involved, from the standpoint of whether or not it is obscene, since it is concealed in a shipping carton, and the very object of this proceeding is the issuance of a search warrant with respect thereto, nevertheless the Court does find that there is probable cause to believe that the carton contains a book, or books, which is obscene within the standards and definitions set out by the United States Supreme Court, namely that the said book, or books, appeals to a prurient interest in sex which exceeds contemporary community standards, is without redeeming social value, and goes beyond the customary limits of candor in describing or representing such matters.

■ The Court further finds probable cause to believe that the book, or books, was transported in interstate commerce between Charlotte, North Carolina, and Atlanta, Georgia, by or on behalf of the respondents Piedmont Book Distributors of Charlotte and Peachtree National Distributors, Inc.

## CONCLUSIONS OF LAW

■ The above Findings of Fact support the issuance of a search warrant as requested by the government.

Under the circumstances of this case, it is impossible to make a definitive finding of obscenity *vel non* with respect to contents of a carton of books which are not before the Court (as the above recitation will show, no copy of the book

"Queer Couples" was presented to the Court for examination by either party).

■ Since the warrant here sought is simply the first step in a criminal proceeding, we do not believe that the decisions seeming to require full-scale "adversary" proceedings going to the ultimate question of obscenity *vel non* are applicable, and while the Court has afforded the parties an opportunity to present all evidence desired, no further, or more detailed hearing is required. United States v. Fragus (Supplemental Opinion), 428 F.2d 1211 (C.A. 5 1970); United States v. Wild, 422 F.2d 34 (C.A. 2 1969).

In view of the above, the Court is concurrently signing the search warrant which has been presented to it by the parties, the *form* of which (only) has been approved by counsel for respondents Piedmont Book Distributors and Peachtree National Distributors, Inc.

It is therefore ordered and adjudged that upon presentation of the warrant to the Clerk of the Court, who by agreement of all parties, including Ryder Truck Lines, has retained administrative custody of the carton since the January 13, 1971, hearing, he deliver said carton to the agent of the government presenting to him the search warrant signed by this Court.

■ In view of the pronouncements of the various Appellate Courts with respect to the necessity for early and definitive judicial review in matters involving First Amendment rights, particularly in obscenity cases, the Court further orders that, if the government intends to institute a prosecution based upon the contents of the carton involved, its evidence with respect thereto be presented to the current Federal Grand Jury empaneled by this Court at its next session, which has been represented to the Court to be in March of this year, failing which the contents of the carton shall be returned by the government to the respondent, Ryder Truck Lines, which may thereafter, pursuant to its own proper procedures, release said carton to either of the other respondents.