**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Johnny Miles HUNT and Baron Raymon Kolb, Defendants-Appellants.**

**No. 73–3165.**

United States Court of Appeals,
Fifth Circuit.

July 1, 1974.

---

J. Mack Ausburn, San Antonio, Tex., for defendants-appellants.

William S. Sessions, U. S. Atty., San Antonio, Tex., Jeremiah Handy, Ralph E. Harris, Asst. U. S. Attys., El Paso, Tex., Robert P. Trout, Atty., Dept. of Justice, Crim. Div., Government Regulations Section, Washington, D. C., for plaintiff-appellee.

Before BELL, SIMPSON and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

Defendants Johnny Miles Hunt and Baron Raymon Kolb were convicted for receiving in interstate commerce obscene publications in violation of 18 U.S.C. § 1462.[1] On appeal, defendants argue that the allegedly obscene publications were obtained as a result of an unlawful search and seizure and that the evidence introduced at trial does not establish the requisite scienter to support their convictions.[2] Concluding that the publications underlying defendants' convictions were unlawfully seized by government agents, we reverse.

In the summer of 1971, Special Agent Robert Bishop of the Federal Bureau of Investigation began investigating the interstate transportation of obscene materials into the El Paso, Texas area. In meetings with Sgt. Genaro C. Oliveri, a Texas police officer, and a person from the United States Attorney's office, Bishop viewed copies of three different magazines obtained from three book stores, namely, the Erotique, the Eros, and the Place. Bishop examined the contents of these magazines and later testified that the magazines contained pictures and textual descriptions of various sexual activities between persons and between animals and persons. His investigation also revealed that these book stores were operated by defendant Hunt and Paul Bik Hogervorst, Jr.,[3] and that both of these persons had been arrested previously for the sale of obscene literature. Furthermore, he learned that these book stores received shipments of books from various California publishing companies known to print and distribute obscene literature, one of which was All Star Distributors of Hollywood.

In the midst of Bishop's investigation, law enforcement officers of the State of Texas searched under the authority of three warrants all three book stores and confiscated the entire stock of each. Bishop appeared at the Erotique just as the last of the materials were being boxed and taken away, but he did not examine any materials while he was there. The day after the search, he went to the El Paso City Jail where the confiscated materials were stored and there examined the contents of some of the publications.

On August 20, 1971, about a month after he examined the confiscated materials in the El Paso Jail, Bishop learned that six boxes addressed to defendant Kolb, in care of Eros, from All Star Distributors were at a local shipping firm. The next day Bishop went to the shipping agency and examined the boxes and the shipping documents. He then exe-

---

1. Section 1462 provides in pertinent part as follows:

    "Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly uses any express company or other common carrier, for carriage in interstate or foreign commerce—

      "(a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character;

      .     .     .     .     .

    "Shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter."

2. The defendants also raise in their brief the argument that § 1462 is unconstitutional because it is vague. They conceded at oral argument, however, that this contention was resolved by this court in United States v. Thevis, 484 F.2d 1149 (5th Cir., 1973).

3. While Hogervorst was tried along with Hunt and Kolb, the trial court granted his motion for judgment of acquittal.

cuted an affidavit in support of a search warrant and appeared before a federal magistrate with an order to show cause why the warrant should not issue against the six boxes. Relying only on the information in the affidavit and Bishop's testimony to the same effect, the magistrate issued the show cause order and the warrant, which specifically provided that it was not to be executed unless the officer was convinced that defendants would not comply with the show cause order. Bishop, armed with the warrant and show cause order, returned to the shipping agency and waited for someone to pick up the boxes.

Kolb arrived the following Monday, August 23, 1971, claimed the six boxes and began loading them into the back of his pickup. After two boxes were in the truck, Bishop and a fellow law enforcement officer, one Crossman, approached Kolb, Bishop identified himself, read the entire warrant to him and took possession of all six boxes. Bishop testified that, in accordance with the terms of the warrant, he took the boxes because he was afraid that the defendants would not comply with the show cause order. The boxes were delivered to the magistrate unopened.

At the show cause hearing the following day the magistrate rejected defendants' contentions that the boxes were seized within the meaning of the Fourth Amendment when taken by Bishop at the shipping firm. The magistrate insisted that, even though Bishop read the warrant to Kolb and physically took possession of the boxes, a seizure and execution of the warrant did not take place until after probable cause and probable obscenity were established at the hear-

ing. The confiscation by Bishop the previous day, according to the magistrate, was merely a temporary detention of the evidence in order to insure its presentation to a judicial officer. When the boxes were opened and the contents examined, the magistrate concluded that the materials were obscene.

Prior to trial, defendants moved to suppress the publications, contending that Bishop's taking possession of the boxes when Kolb attempted to pick them up at the shipping firm was a seizure within the Fourth Amendment unsupported by probable cause. The trial court concluded that the initial confiscation of the boxes to insure that the evidence was presented to a magistrate was reasonable under the circumstances of this case. Since the subsequent hearing before the magistrate established probable cause to open the boxes, the initial taking of the boxes did not violate defendants' rights. Accordingly, the motion to suppress was denied, and the defendants thereafter were found guilty of transporting pornography in interstate commerce.

■ The first question is whether Bishop's taking physical possession of the six boxes at the shipping firm was a seizure within the meaning of the Fourth Amendment. The government argued, and the magistrate and district court agreed, that this confiscation was not a seizure, but merely a temporary detention of the evidence required under the circumstances of this case to insure that the evidence was presented to a magistrate. Since the warrant specifically authorized such a procedure,[4] the government contends that Bishop's so-called temporary detention of the evi-

---

4. After describing the six boxes to be seized, the warrant provides:

"You are hereby ORDERED not to execute this search warrant unless you are satisfied and convinced that the custodian of the 6 boxes described herein will not comply with the order to show cause why a search warrant should not be issued which is attached to and made part of this search warrant. In the event the search warrant is executed, the 6 boxes described

herein are to be delivered immediately to the Magistrate's Court without being opened or otherwise disturbed in any manner."

We note this provision of the warrant with disapproval, because it delegates to the executing officer far too much discretion in determining whether the materials are to be seized or not. See Kremen v. United States, 353 U.S. 346, 77 S.Ct. 828, 1 L.Ed.2d 876 (1957).

dence was not a violation of defendants' Fourth Amendment rights. The essence of the government's argument is that it is constitutionally permitted to seize property and establish probable cause afterwards to justify the seizure. But the cases cited by the government [5] do not stand for such a broad proposition, and we decline to adopt that position now.

While it is true that many courts have utilized the show cause procedures in obscenity cases to be sure that citizens are afforded full First Amendment protections, implementation of such a procedure does not authorize a violation of the Constitution. Law enforcement officials cannot seize a person's property unless the seizure is based on probable cause. Simply because the magistrate says that this was not an unlawful seizure proscribed by the Fourth Amendment does not make it so. Bishop and Crossman, without Kolb's consent, removed two of the six boxes from the back of Kolb's pickup and confiscated the other four boxes as Kolb was attempting to load them. We believe that this taking, whether it be temporary or otherwise, is a seizure within the terms of the Fourth Amendment. No doubt there is a possibility that the defendants would not comply with the magistrate's show cause order, or that the defendants might tamper with, or destroy, the evidence. But a court has ample authority to issue restraining orders to adequately insure that nothing happens to the evidence and to require that defendants abide by the show cause order. Demich, Inc. v. Ferdon, 426 F.2d 643 (9th Cir., 1970).

Attempting to validate Bishop's confiscation of the six boxes, the govern-

5. In United States v. Rich, 407 F.2d 934 (5th Cir., 1969), Judge Ainsworth specifically noted that the seizure of obscene materials was made under the authority of a warrant. The only question in that case was whether the affidavits set forth sufficient information to establish probable cause, and we concluded that there was. The seizure, under the authority of a valid warrant, was not a violation of the Fourth Amendment.

Equally unauthoritative is United States v. One Carton Containing a Quantity of Paperback Books, 324 F.Supp. 957 (N.D.Ga., 1971).

In *One Carton* the carton containing the books was broken in transit and agents of the common carrier noticed that it contained books with photographs portraying sexual conduct between men and women. The contents of the package was plainly known to the agents of the carrier. Additionally, however, the government never seized the package itself from the carrier. Instead, an agent of the carrier produced the package at the show cause hearing.

In United States v. Little Beaver Theatre, Inc., 324 F.Supp. 120 (S.D.Fla., 1971), the trial court, after application for a warrant based on an affidavit, entered a temporary restraining order to prevent any interested person from disposing of or altering the alleged obscene film. At all times prior to the show cause hearing, the film was in the possession of respondents. The film was not seized by the government until after probable cause for issuance of the warrant was established at the show cause hearing.

Similarly, in United States v. Fifty Magazines, 323 F.Supp. 395 (D.R.I., 1971), there was no seizure by government agents of any obscene publications. The custodian of the materials was merely required to produce the publications pursuant to a subpoena duces tecum in order to conduct a prior adversary hearing as to their obscene nature.

It is true, as the government argues, that a prior adversary hearing, such as a show cause hearing, can be held where possessors of alleged obscene materials have the opportunity to establish that the materials are not obscene and are therefore protected by the First Amendment. Maizels v. Van Hoomissen, 429 F.2d 982 (9th Cir., 1970); Demich, Inc. v. Ferdon, 426 F.2d 643 (9th Cir., 1970). Such a procedure, conducted in deference to the First Amendment, does not authorize a seizure of publications without a warrant or probable cause in violation of the Fourth Amendment that is justified on the basis of a hearing held subsequent to the seizure where probable cause is sought to be established retroactively.

The only cases cited by the government that offer support for such a proposition are United States v. Strand Art Theatre Corp., 325 F.Supp. 256 (W.D.Mo., 1970), and United States v. Berger, 325 F.Supp. 249 (W.D.Mo., 1970). In these cases, however, the court did not specifically confront the issue of whether the seizure, without a valid warrant or probable cause, of alleged obscene materials when in the possession of a common carrier was a violation of the Fourth Amendment.

ment contends that the detention here in question is similar to that recognized by the Supreme Court in United States v. Van Leeuwen, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970). A police officer and postal clerk in *Van Leeuwen* temporarily detained two packages placed in the mail while investigating authorities discovered enough information to make out probable cause to support the issuance of a search warrant. Justice Douglas, writing for a unanimous court, noted that "[t]he nature and weight of the packages, the fictitious return address, and the British Columbia license plates of respondent who made the mailings . . . certainly justified detention, without a warrant, while an investigation was made." *Id.* at 252. A search warrant was ultimately issued based on probable cause, the packages "opened, inspected, resealed, and promptly sent on their way." *Id.* at 250.

In *Van Leeuwen*, however, the policeman merely removed the suspected parcels from the normal flow of the mails when they were initially deposited and replaced them after inspection in order for them to proceed on to their des-

tination. In the instant case, the boxes were not simply removed from the normal flow of the mails, but were seized after they had reached their destination, were claimed by defendant Kolb and two of the boxes were actually in his physical possession while the remaining four were in the process of being loaded on his truck. It was not until the boxes were actually within the recipient's possession, or at least his control, that the government agents made their move and seized them. This difference, we think, takes the seizure of the six boxes outside the scope of the temporary detention recognized in *Van Leeuwen*.

■ Having concluded that the government agents' confiscation of the six boxes at the local shipping terminal was a seizure within the meaning of the Fourth Amendment, we must now determine whether the seizure was based on probable cause. As noted previously, Bishop executed an affidavit in support of a warrant, and a warrant was issued based thereon. While the affidavit initially appears to set forth sufficient information to constitute probable cause for the seizure of the boxes,[6] a closer examination reveals that the affidavit does

6. The affidavit provides in full as follows: "My name is Robert Bishop. I am a Special Agent of the Federal Bureau of Investigation, and I have personal knowledge or reliable information concerning the matters set forth in this affidavit. Since on or about July 15, 1971 and continuing up to the present time, I have been working with investigations concerning possible violations of 18 U.S.C. § 1462 by the owners of Eros Bookstore, the Place Bookstore, and Erotique Bookstore, all of which stores are located in El Paso, Texas. I have personally visited the Erotique Bookstore and observed the inventory of books, magazines and novelties. All of the books and magazines which I have observed in Erotique contain photographs of lewd and lascivious sexual activities between nude men and nude women, between nude men and nude men, and between nude women and nude women. The books also contain descriptions of lewd and lascivious and unnatural sexual activities between animals and women. I did not observe any books, magazines, or novelties in the Erotique Bookstore which did not con-

tain photographs or descriptions of lewd sexual activities. I have observed the inventory of the Eros Bookstore and the inventory of the Place Bookstore, after the inventory was seized by the El Paso Police Department pursuant to a search warrant, and the inventory consisted of books, magazines and novelties. All of the books and magazines contained photographs and descriptions of lewd and lascivious sexual activities between nude men and nude women, nude men and nude men, and nude women and nude women. The novelties consist of various devices related to sexual activities such as artificial male and female genitals and sexual organs, all of which are designed to appeal to the prurient interests. I have personally observed bills of lading showing shipment of these books, magazines and novelties from various points in California to El Paso via common carriers.

"I am familiar with the procedure by which the books, magazines and novelties which I have described in this affidavit are shipped from California via interstate carrier to El Paso, Texas, and delivered

not make out probable cause for two reasons. First, it is now plain that false statements in an affidavit can eviscerate the existence of probable cause. United States v. Thomas, 489 F.2d 664 (5th Cir., 1973). If the affiant intentionally makes false statements to mislead a judicial officer on application for a warrant, these falsehoods render the warrant invalid regardless of whether or not such statements are material to establishing probable cause. If the warrant contains false statements not intentionally made to mislead but are material to the establishment of probable cause, the material falsehoods must be excised from the warrant and the remaining information examined to see if it independently constitutes probable cause. United States v. Thomas, *supra*. If the affidavit, after excising material falsehoods, fails to set forth sufficient information to make out probable cause, the warrant issued on the basis of the affidavit is, of course, invalid.

Applying these principles to the case at hand, it is necessary to delete any statements to the effect that Bishop viewed the contents of any publication while he was *in* any of the book stores. It is undisputed that the only time Bishop was in any of the three stores was when he was in the Erotique near the conclusion of the state search and that he did not view any materials at that time. Yet the affidavit plainly misrepresents that he viewed obscene literature while he was *in* the book store. The only materials seen by Bishop were publications obtained by state agencies that he examined during his investigation prior to the state search and the materials obtained as a result of the state search.

Since these statements in the affidavit are false and material to the establishment of probable cause, they cannot be considered in determining whether there was probable cause for the seizure of the six boxes.

■■ Second, it is necessary to delete information in the affidavit that was obtained as a result of an unlawful search and seizure conducted by state officials. The government does not dispute, and the district court concluded, that the state's massive confiscation of all the materials in all three book stores violated defendants' Fourth Amendment rights. As evidence unlawfully seized by state authorities cannot be used as the basis of a federal prosecution, likewise information obtained as a result of the unlawful state seizure may not be set forth in an affidavit to establish probable cause for a subsequent federal search. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Elkins v. United States, 364 U.S. 206, 80 S. Ct. 1437, 4 L.Ed.2d 1669 (1960).

In view of this principle, we must exclude from the determination of probable cause any information obtained as a consequence of the illegal state seizure. The affidavit specifically states that the affiant observed the inventory of the Eros and Place book stores after the inventory had been seized and removed to the El Paso City Jail. Thus, references to the examination of publications noted at that time must be excised from our determination of whether probable cause existed for the seizure of the six boxes.

■ Excluding both the material falsehoods and the information obtained as a result of the illegal state seizure,

to Eros, the Place, and Erotique, here in El Paso, Texas. The six boxes now on the premises located at 2216 E. Yandell Street, are the same type boxes which I have observed in the past as containing books, magazines, and novelties sent to Eros, the Place and Erotique in El Paso, Texas. I have observed the shipping documents concerning the six boxes located at 2216 E. Yandell Street in El Paso, Texas. I am familiar with the business and activi-

ties of the consignee of the six boxes, and based upon personal knowledge, I have reason to believeave that the six boxes contain books, magazines and novelties which are obscene, lewd and lascivious, and which were knowingly shipped by common carrier in interstate commerce." '
We make no determination of whether this affidavit considered in its entirety sets forth sufficient information to constitute probable cause.

the affidavit in question reads as follows:

"My name is Robert Bishop. I am a Special Agent of the Federal Bureau of Investigation, and I have personal knowledge or reliable information concerning the matters set forth in this affidavit. Since on or about July 15, 1971 and continuing up to the present time, I have been working with investigations concerning possible violations of 18 U.S.C. § 1462 by the owners of Eros Bookstore, the Place Bookstore, and Erotique Bookstore, all of which stores are located in El Paso, Texas.

.    .    .    .    .    .

"I am familiar with the procedure by which the books, magazines and novelties which I have described in this affidavit are shipped from California via interstate carrier to El Paso, Texas, and delivered to Eros, the Place, and Erotique, here in El Paso, Texas. The six boxes now on the premises located at 2216 E. Yandell Street, are the same type boxes which I have observed in the past as containing books, magazines, and novelties sent to Eros, the Place and Erotique in El Paso, Texas. I have observed the shipping documents concerning the six boxes located at 2216 E. Yandell Street in El Paso, Texas. I am familiar with the business and activities of the consignee of the six boxes, and based upon personal knowledge, I have reason to believe that the six boxes contain books, magazines and novelties which are obscene, lewd and lascivious, and which were knowingly shipped by common carrier in interstate commerce."

This affidavit, after the appropriate excisions, does not contain sufficient information to establish probable cause. It contains nothing more than Bishop's statements that he conducted an investigation, that he was familiar with the manner in which obscene materials are shipped into Texas, and that these boxes were similar to those he had seen previously. But the evidence established at the motion to suppress hearing demonstrated that the shipments he had previously observed had different external markings, were not shipped from All Star Distributors, and were shipped by way of a different shipping firm. Furthermore, he testified that his examination of the shipping documents revealed nothing about the contents of the boxes. Without any specific knowledge that these boxes contained obscene materials, the affiant's statements show nothing more than assertions and conclusions of suspected criminal activity that are unsupported by the facts related in his affidavit and thus do not establish probable cause. Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933).

■ Having concluded that the affidavit was insufficient to establish probable cause and thus the warrant based on the affidavit is invalid, the facts of this case are distilled down to a situation similar to Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973). In *Roaden* a county sheriff in Kentucky viewed a film at a drive-in theater and, based on his own predisposition, concluded that it was obscene. Without a prior determination by a judicial officer of the obscene nature of the film or a warrant, the sheriff arrested Roaden, the manager of the theater, and seized a copy of the film. The Supreme Court held that such a seizure was invalid. Reiterating that the seizure of books and film arguably protected by the First Amendment is to be assessed in light of a "higher . . . hurdle of reasonableness" than the seizure of dangerous weapons or stolen goods, the Court concluded that law enforcement officers should not make this determination based on their subjective determinations of obscenity. In order to fully protect First Amendment rights, the officers should retire to an impartial judicial officer for the determination of whether probable cause, measured by a higher standard, exists for the seizure of alleged obscene materials. Likewise, Bishop in this case, without the authori-

ty of a valid warrant and based on his own assumption that the boxes contained legally obscene literature, seized the six boxes of alleged obscene materials. This seizure contravened defendants' rights against unreasonable seizures under the Fourth Amendment.

The defendants' convictions are reversed.