**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**John Everett GATTIE and Thomas
Walter Bailey,
Defendants-Appellants.**

**No. 74–1048.**

United States Court of Appeals,
Fifth Circuit.

April 18, 1975.

Joseph A. Varon, Hollywood, Fla., for Gattie.

Edward M. Kay, Hollywood, Fla., for Bailey.

Robert W. Rust, U. S. Atty., Joel C. Fanning, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and AINSWORTH and DYER, Circuit Judges.

## JOHN R. BROWN, Chief Judge:

This double appeal from a double conviction tests the legality of those convictions on a number of grounds—the most potentially troublesome of these arising in the always perplexing search and seizure area but since our view of the law and facts in the case make the constitutional validity of the search an unnecessary question we affirm.

The facts are uncontested and relatively simple. On June 17, 1973 customs officers, acting on a tip received earlier that day, observed a Cessna 206 aircraft over Homestead, Florida and followed it in their own aircraft until it landed at Boca Raton Airport. Boca Raton is not equipped with customs facilities for inspection of aircraft arriving from a foreign country. The Cessna had first been sighted approximately 60 miles southeast of the Florida coast and the FAA information was that the flight was inbound from Montego Bay, Jamaica. As the Cessna landed, one of the agents in the following aircraft observed that its rear windows were completely blocked by something stowed in the aft section of the plane. After both aircraft had landed, Agent Warr approached appellant Gattie, the Cessna's pilot, identified himself as a Customs Agent and observed 8 large bundles in the aft end of the airplane. When Agent Reimann asked for a knife to cut open the bags, Gattie said, "You don't need to cut it open, it's marijuana." The agents then placed Gattie and the Cessna's passenger, Vernon Doremus, under arrest. The field test they then performed on the contents of the bags confirmed that it was marijuana.

At approximately six o'clock that evening, after considerable discussion between the two arrested smugglers and the Customs Agents, Doremus agreed to cooperate by revealing the rest of the plan. Arrangements were then made to go ahead with that plan and deliver the marijuana to the home of appellant Bailey.

The marijuana was loaded into a station wagon. Doremus, followed by customs agents in two cars, drove the station wagon to Bailey's house in Pompano Beach and parked out front. By this time it was about nine-forty and dark. The agents watched Doremus enter the house and a short time later observed a man come out of the house, remove two of the bags of marijuana from the back of the station wagon and reenter the house. Although the agents were some 150 feet from the man and so were unable to see him well enough even to testify as to the color of his clothes, the Government established to the satisfaction of the jury by circumstantial evidence that this man was Bailey. The agents then entered the house, placed Bailey under arrest and seized the two bags of marijuana.

Bailey, Doremus and Gattie were indicted in the Southern District of Florida

of (i) conspiracy to import and possess marijuana, (ii) importing approximately 410 and ½ pounds of marijuana and (iii) possession with intent to distribute. Doremus pleaded guilty to count (ii) and the other charges against him were dropped. Gattie and Bailey each filed a motion to suppress and both were denied. After a trial to a jury Bailey was found guilty of count (iii) and Gattie of all three counts.[1]

 Gattie raises two points on appeal. First, he urges that his motion for a mistrial was improperly denied when a Government witness testified without proffer and without complying with the Trial Court's discovery order as to an incriminating statement purportedly made by Gattie at the time of arrest.[2] Second, he contends that the Court erred in failing to have an evidentiary hearing on his charge that the Government suppressed evidence that would establish that the reason Gattie landed at Boca Raton, presumably rather than at an airport that had customs facilities, was that the Cessna was low on fuel.

Our answer to each of these contentions is simple—even if we assume them to be true, they cannot rise to a level higher than error that is harmless beyond a reasonable doubt. Harrington v. California, 1969, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284; Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; United States v. Steinkoenig, 5 Cir., 1973, 487 F.2d 225. The weight of evidence against Gattie is heavy indeed. The plane that he piloted was followed from sixty miles at sea to Boca Raton Airport and he was arrested at the scene with 400 pounds of what he admitted to be marijuana.

 Bailey's situation is not so simple. He appeals on three grounds—(i) his motion to suppress was improperly denied in that the warrantless search and seizure of the two bags of marijuana from within his house was deficient under the Fourth Amendment,[3] (ii) his motion for acquittal should have been granted because the evidence identifying him as the individual who carried the marijuana from the car to the house was too weak to support conviction, and (iii) hearsay statements admitted under the conspiracy exception were considered by the jury as evidence of his guilt of the substantive charges.

Bailey's contentions (i) and (ii) fall together. Both are based on a common misapprehension of the nature of his crime. Bailey was not convicted of possession of the marijuana within the house. His crime was complete when he removed the two bags of marijuana from the rear of the station wagon. The identification evidence, although not so strong nor perhaps as well presented as it might have been, was sufficient to permit the jury to find beyond a reasonable doubt that this was Bailey. United States v. Polite, 5 Cir., 1974, 489 F.2d 679; United States v. Schechter, 5 Cir., 1973, 475 F.2d 1099; Gordon v. United

1. The Court granted Bailey's motion for acquittal as to Count I. The jury found him not guilty as to Count II and guilty as to Count III. Gattie was found guilty of all three counts by the jury. The Court sentenced Gattie and Bailey to 18 month prison terms and two years of parole.

2. The statement concerned the loading of the marijuana into the airplane near Montego Bay, Jamaica.

3. After observing Bailey carry the two bags of marijuana into the house, the agents entered the house and placed him under arrest. The record does not clearly reveal where within the house the arrest took place, but it does show that the marijuana was discovered in the bedroom. Bailey contends that a warrantless seizure is unreasonable in a case like this one in which the agents had sufficient time to obtain a warrant and, in fact, could have delayed the delivery of the marijuana in order to obtain one. We are at a loss to understand how the agents could obtain a warrant to search the house for marijuana which they merely hoped was to be later taken into the house when the affidavit would have to honestly state that at that moment all of the marijuana was still in the station wagon, cf. United States v. Hunt, 5 Cir., 1974, 496 F.2d 888; United States v. Thomas, 5 Cir., 1973, 489 F.2d 664. The Government calls this a search incident to an arrest. As we have indicated above, we do not find it necessary to answer this question.

States, 5 Cir., 1971, 438 F.2d 858. Because Bailey's crime was complete at the time the agents observed him in possession of the marijuana at the tailgate of the station wagon, the possible illegality of the later seizure of the marijuana is without significance. The jury need only be convinced beyond a reasonable doubt that the bags contained marijuana. They had ample justification to do so. The agents testified that they performed a field test on the marijuana at the airport and obtained positive results. The bundles remaining in the station wagon—not even arguably tainted by an unreasonable search and seizure—were later shown to contain marijuana.

 The substance of Bailey's hearsay complaint is that, although the Trial Judge directed acquittal of the conspiracy charge at the close of evidence, a number of incriminating statements had already been admitted under the conspiracy exception.

Although we think it possible that despite the lower court's ruling that there was insufficient evidence to go to the jury on the conspiracy count there may very well have been sufficient "independent evidence of a concert of action" to justify the admission against Bailey of the out-of-court statements of his confederates, see Park v. Huff, 5 Cir., 1975, 506 F.2d 849 (en banc), we find that the hearsay had no prejudicial effect. A careful examination of the statements of which Bailey complains reveals that they had either no relevance to the possession charge or were proved by independent evidence.

In his brief Bailey complains of three statements. First, he complains of Agent Warr's testimony that Gattie told him that he picked up the marijuana in Jamaica. This obviously has no relevance to the possession charge. It, of course, does have some bearing on the importing count but Bailey was found not guilty of that. Second, he cites Gattie's out-of-court statement—"You don't have to cut it open. It's marijuana." The Government proved by independent evidence that the bags which were later placed in the station wagon and unloaded from it by Bailey contained marijuana. Third, he cites the conversations alluded to by Agent Warr in which it was "decided" by Gattie and Doremus to "proceed . . . in a caravan . . to Pompano. . . ." There is no dispute that the Agents directly testified that Doremus followed by the Agents "proceeded in a caravan to Pompano."

 In addition, and as Bailey admits, the Trial Judge instructed the jury to disregard these statements when considering the question of Bailey's guilt of either of the substantive counts. We have been presented with no reason to find that this instruction was ineffective.

Affirmed.