**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Mark Bruce ASTROFF and Robert Duane Steverson, Defendants-Appellants.**

**No. 76–2289.**

United States Court of Appeals,
Fifth Circuit.

Aug. 8, 1977.

---

Martin G. Weinberg, James W. Lawson, Boston, Mass., for defendants-appellants.

Edward B. McDonough, Jr., U. S. Atty., Mary L. Sinderson, George A. Kelt, Jr., Donald L. Lambright, James R. Gough, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before GODBOLD, SIMPSON and GEE, Circuit Judges.

SIMPSON, Circuit Judge:

This appeal requires our assessment of the validity of a search under a warrant predicated upon a facially sufficient affidavit containing negligent misrepresentations of facts material to the establishment of probable cause. The trial court's denial of a motion to suppress the search was followed by convictions of each of the appellants before a jury for possession of marijuana with intent to distribute and for conspiracy to commit that substantive offense, Title 21, U.S. Code, §§ 841(a)(1) and 846.[1]

We conclude that without such misrepresentations the affidavit failed to show prob-

---

1. Each appellant was sentenced to 3 year concurrent sentences to be followed by 2 years concurrent special parole.

able cause, and reverse under our evaluation of precedents in this circuit.

The key evidence introduced by the government at trial was four suitcases filled with marijuana seized from a railroad baggage car under a search warrant. The affidavit in support of the warrant described the luggage and the persons who had checked it, listing the baggage claim check numbers. The facts giving rise to probable cause were set forth in relevant part as follows:

1. The telephone number given by the individuals purchasing the tickets turned out to be a fictitious number . . . [and] due to the fictitious telephone number the ticket agent was suspicious of the two prospective travelers. . . .

2. [W]hen the baggage handler subsequently took possession of the four suitcases, he smelled a strong odor coming from the suitcases. . . .

3. [I]nspection of the four (4) suitcases by the two investigators revealed a green vegetable substance which appeared to be about one hundred and fifty pounds (150) of marijuana.

The affiant, a DEA agent, based the above statement of facts on a telephone conversation with a security agent for the railroad. The railroad agent reported that two investigators had smelled the suitcases and detected marijuana; this report formed the sole basis of the DEA agent's belief that the luggage contained marijuana. The affiant testified that by his phrasing of the affidavit he neither believed nor meant to imply that the suitcases had been opened or that anyone had seen any marijuana in connection with them.

■ The district court found the statement that "inspection revealed a green vegetable substance which appeared to be . . . marijuana" amounted to a material misrepresentation, as it suggested inspection by sight rather than smell, a very different means of detection. (R.40). But the district court concluded that it need not

invalidate an affidavit resting materially on negligent misrepresentation, as it classified the misstatement here. While we think the record supports the court's finding of negligent material misrepresentation, we conclude that such a statement should play no part in establishing probable cause upon judicial review of a search warrant affidavit. The critical inquiry is not whether a misrepresentation is negligent or intentional, but whether it is material.

## I. THE FACT OF MIS-REPRESENTATION

■ The government chiefly rests on its argument that the statement in question was correct in every detail, if ambiguous. Granted that an "inspection" need not be visual and that one could designate by color a substance identified only by smell, a court's function is not to dissect the words of an affidavit at the request of either the accused or the prosecution. Consequently we agree with the court below:

[Reading] the statement in a common-sense fashion, it clearly misrepresents the true facts. An investigation that "reveals a green vegetable substance" implies that the inspectors have viewed the substance, and seeing contraband is materially different from smelling it, especially when highly relevant to a probable cause inquiry.

(R.40). While the DEA agent may have employed the label "green vegetable substance" out of an abundance of caution (as he testified) in attaching the label marijuana, the description by color is no less misleading, particularly in the context of an affidavit that has already mentioned odor, and could not reasonably have appeared otherwise.

■ The misstatement, moreover, was unquestionably material to the establishment of probable cause. Absent that statement, the affidavit says no more than that a baggage handler smelled a strong odor

coming from the suitcases belonging to two young men suspicious by reason of a fictitious phone number given by the purchaser of their train tickets. As the court below observed, these remaining allegations cannot begin to demonstrate probable cause.[2]

We concur also in the trial court's characterization of the misrepresentation as negligent. The reasonable implication of the words chosen by the affiant is that investigators viewed the substance in the suitcases. The record does not suggest that the affiant had any intention of deceiving the magistrate. Translating the report that investigators had smelled marijuana into the terms of the affidavit was nevertheless avoidable carelessness, as the trial court concluded. (R.42).

## II. LEGAL CONSEQUENCES OF THE MISREPRESENTATION

This court has had several recent occasions to consider the effects of misstatements of fact in search warrant affidavits. *See United States v. Park*, 531 F.2d 754 (5th Cir. 1976); *United States v. Hunt*, 496 F.2d 888 (5th Cir. 1974); *United States v. Thomas*, 489 F.2d 664 (5th Cir. 1973), cert. denied 423 U.S. 844, 96 S.Ct. 79, 46 L.Ed.2d 64 (1975); *United States v. Morris*, 477 F.2d 657 (5th Cir.), cert. denied 414 U.S. 852, 94 S.Ct. 146, 38 L.Ed.2d 101 (1973). In its most thorough discussion of the issue, *Thomas, supra*, the Circuit stated its approach succinctly:

[W]e hold that affidavits containing misrepresentations are invalid if the error (1) was committed with any intent to deceive the magistrate, whether or not the error is material to the showing of probable cause; or (2) made nonintentionally, but the erroneous statement is material to the establishment of probable cause for the search.

489 F.2d at 669.

As the court below correctly observed, the *Thomas* opinion expressly declined to decide what degree of unintentional material misrepresentations, i. e. reckless, negligent or innocent, would invalidate an affidavit. See *Thomas, supra*, 489 F.2d at 671 n. 5. Surveying the jurisprudence, the district judge adopted the conclusion of *United States v. Carmichael*, 489 F.2d 983, 989 (7th Cir. 1973), "that evidence should not be suppressed unless the officer was at least reckless in his misrepresentations." Because we find that the few hints offered by decisions of this court tend in the opposite direction and, more importantly, because we conclude that a sound balance between deterring potentially intrusive police misconduct and encouraging effective police investigatory work dictates a different conclusion, we reject the approach taken in *Carmichael* and the court below.

First, in deciding cases this court has generally looked initially at the materiality of the misstatement. *See, e. g., Park, su-*

---

**2.** We reject the suggestion that, because the affidavit did not unambiguously state a false fact, as is the typical problem in cases in this area, the reviewing court should rewrite the affidavit to reflect what the agent actually knew rather than to delete his misstatement. Such a course would in effect allow the government to bolster an affidavit by extraneous evidence.

Even if the statement is amended to indicate that inspection revealed the smell of marijuana, the affidavit is still insufficient to establish probable cause. It would still lack any basis on which a magistrate could conclude that this olfactory detection of marijuana was credible. *See Johnson v. United States*, 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948); *United States v. Pond*, 523 F.2d 210 (2d Cir. 1975), cert.

denied 423 U.S. 1058, 96 S.Ct. 794, 46 L.Ed.2d 649 (1976); *United States v. Lewis*, 392 F.2d 377 (2d Cir.) cert. denied 393 U.S. 891, 89 S.Ct. 212, 21 L.Ed.2d 170 (1968). That the odor of marijuana can establish probable cause has been recognized by this Court without discussion of any required showing of ability to identify the substance by smell; *see United States v. Santibanez*, 517 F.2d 922 (5 Cir. 1975). We have found no case, however, in which this Court has rejected the indication in the Johnson line of cases that probable cause requires a statement of the investigator's qualifications to identify by odor. Compare *United States v. Torres*, 537 F.2d 1299 (5 Cir. 1976); *United States v. Vallejo*, 541 F.2d 1164 (5 Cir. 1976).

*pra; Thomas, supra.* While findings of non-materiality have usually rendered further inquiry unnecessary, the approach offers, if inconclusively, a possible further implication. In *Park, supra,* for example, we concluded that the misstatement could only have been an "honest mistake". Drawing on the holding of *Thomas* quoted above, the court found it necessary only to determine whether the mistake was material to the existence of probable cause. This tends to imply that a material "honest mistake" would require invalidation of the affidavit. In any case, the *Park* court's consistent focus on materiality suggests that inquiry as the appropriate tool for insuring that the judiciary does not fall into assessing affidavits as entries in an essay contest; *see United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). The inference to be drawn is that the materiality determination is a preferable analysis to a difficult set of distinctions between degrees of unintentional misconduct.

In one case since *Thomas, United States v. Hunt,* 496 F.2d 888 (5th Cir. 1974), moreover, this court required the *excision* of an intentional misstatement in a search warrant affidavit. Additional parts of the affidavit were excluded from the probable cause review because they rested on a prior illegal seizure. With the affidavit thus twice deleted, the court found probable cause lacking and invalidated the warrant. This court is thus on record as having overturned a search resting on an affidavit in part defective because of an unintentional misstatement, without identifying any particular degree of unintentional misconduct.[3]

Even without any indication in our decisions that negligent material misstatements invalidate a search warrant affidavit, such a rule is salutary as a matter of policy. The 7th Circuit, adopting the contrary rule in *Carmichael, supra,* recognized that negli-

gent misstatements by the police should and theoretically could be deterred. Opining that the line between innocence and negligence would be difficult to draw, however, that court determined to invalidate affidavits only for reckless misstatements. See *Carmichael, supra,* 489 F.2d at 989.

Distinguishing reckless from merely unreasonable behavior seems at least as difficult an inquiry. Certainly nothing suggests that the signposts of the recklessness inquiry will be so clear in this context as to compel a rule exonerating a degree of misconduct the law generally assumes deterable.

As this court has noted, "[t]he warrant procedure operates on the assumption that statements in the affidavit are at least an accurate representation of what the affiant knows . . . ." That *ex parte* process "would quickly deteriorate into a meaningless formality were we to approve searches or arrests based upon misrepresentations or incorrect factual statements." *United States v. Morris,* 477 F.2d 657, 662 (5th Cir. 1973).

Our refusal to countenance affidavits which fail to establish probable cause absent negligent misrepresentations will effectuate those assumptions underlying the integrity of the warrant procedure. The materiality inquiry is a sufficient counterbalance to any judicial tendency to demand semantic precision from those engaged in the harried and often hurried pursuit of crime. We agree with the following comment upon the type of misstatement involved here, an officer's negligent reduction of a report from another source to the four corners of an affidavit:

> Exclusion of evidence only when procured by negligent misstatements *material* to

**3.** The cases tend to confuse the standards for excision in the review process and invalidation of the affidavit. The proper approach and that generally taken, consistent with the holding in *Thomas,* is to consider the affidavit absent the unintentional misstatement. If the remaining

averments do not establish probable cause, the misstatement was "material" and the court must then confront the question of what degree of unintentional material misstatements should invalidate search warrant affidavits.

**1374**

showing probable cause should prod police to make prudent investigations about as well as a full-scale exclusionary rule, since the police will usually not know until they apply exactly *which* allegations will be critical . . . Allowing the introduction of evidence when the affiant's negligence affects only an immaterial allegation will save a number of otherwise unobjectionable convictions without significantly restricting the deterrent values of the rule.

Kupperman, Inaccurate Search Warrant Affidavits As A Ground For Suppressing Evidence, 84 Harv.L.Rev. 825, 832 (1971).

### III. CONCLUSION

■ We adopt the rule that a negligent misstatement in a search warrant affidavit renders that affidavit invalid if it would not establish probable cause without the misstatement.[4] The affidavit here contains such a negligent misstatement. It is common experience that a wide gulf separates perception by smell and perception by sight; the affiant's failure to distinguish between the two was no scrivener's error. Absent the misrepresentation in this affidavit, probable cause is lacking and the evidence obtained pursuant to the warrant based on that affidavit should have been suppressed.[5] Since that evidence was crucial to the case against appellants, the judgments of conviction appealed from are

REVERSED.

**4.** As to whether full protection of the warrant procedure would require invalidation of affidavits resting on innocent material misrepresentations, we need not decide.

**5.** Our holding that no probable cause existed (without the material misrepresentations) of course brings the warrant here squarely under the ban of the Fourth Amendment: ". . . no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, . . ." Cf. *United States v. Chadwick*, —— U.S. ——, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

**1.** In *United States v. Thomas*, 489 F.2d 664 (5th Cir. 1973, *cert. denied*, 423 U.S. 844, 96 S.Ct. 79, 46 L.Ed.2d 64 (1975), we expressly reserved the question. 489 F.2d at 671 n. 5. In *United*

GEE, Circuit Judge, dissenting:

I respectfully dissent.

Rather than seize and search suitcases that unquestionably contained marijuana, a railroad investigator and a police detective in Tucson, Arizona, chose to relay their suspicions to DEA agents in Houston, Texas. One of these swore out an affidavit to secure a warrant to search the suitcases. Although the Tucson investigators had never opened the suitcases or viewed the marijuana, and so informed the Houston agent, the affidavit contained unfortunate phraseology, suggesting that the Tucson investigators saw, rather than smelled, the marijuana. Characterizing this error as a "negligent misrepresentation" the majority invalidates the affidavit, the search warrant, the admission of the marijuana into evidence, and the convictions of these two defendants. Because I am unwilling to join the majority's relentless application of the exclusionary rule, I dissent.

Granting that the error was a "misrepresentation" and that it was "negligent" the majority's decision to invalidate every affidavit containing what a court may later decide were material "negligent misrepresentations" is too strong for me. Contrary to the majority's suggestion, I find no "hints" in our cases as to what degree of unintentional material misrepresentation is required to invalidate an affidavit.[1] As for

*States v. Park*, 531 F.2d 754 (5th Cir. 1976), we concluded that the unintentional misrepresentation was immaterial and never reached the question of the effect of an unintentional material misrepresentation. Finally, the majority's statement of *United States v. Hunt*, 496 F.2d 888 (5th Cir. 1974) is unconvincing. In *Hunt* the court excised an intentional material misstatement along with material based on a prior illegal search. Under *Thomas* the presence of an intentional, material misstatement should have invalidated the entire affidavit. I fail to see how the majority can cite *Hunt* as a case in which we overturned an affidavit because of an *unintentional* misstatement.

the majority's remark that invalidating affidavits for negligent material misrepresentations is a salutary rule, I cannot agree. Indeed, viewed against the background of the major claimed justification for the exclusionary rule, the statement is a contradiction in terms. For if, as is well settled, the purpose of the exclusionary rule is to deter overzealous police conduct, then to extend it to apply to conduct which is not even intentional—neither overzealous, zealous, nor reluctant but merely careless—is inappropriate. We should refuse to employ the exclusionary rule as a bludgeon to correct police grammar and usage, especially when the police in general good faith have sought the magistrate rather than relying on "exigent circumstances" to justify their search. *Cf. United States v. Hill*, 500 F.2d 315, at 322 (5th Cir. 1974).

Finally, I must take issue with the majority's apparent imposition of a requirement that an affidavit state an investigator's qualifications to identify marijuana by odor. All that the cases cited by the majority require is that a "substantial basis" exist for the magistrate's independent conclusion that the law officer was qualified to detect the odor of marijuana. *See United States v. Pond*, 523 F.2d 210, 213 (2d Cir. 1975), *cert. denied*, 423 U.S. 1058, 96 S.Ct. 794, 46 L.Ed.2d 649 (1976). Here the magistrate could conclude from the nature of the work of the railroad agent and the police detective and the fact that they operated in Tucson, Arizona—a known rendezvous point for drug smugglers—that the agent and the detective were qualified to detect the odor of marijuana. *See United States v. Lewis*, 392 F.2d 377 (2d Cir.), *cert. denied*, 393 U.S. 891, 89 S.Ct. 212, 21 L.Ed.2d 170 (1968). *Cf. Monnette v. United States*, 299 F.2d 847, 850 (5th Cir. 1962) (agent's smelling of odor of fermenting mash constituted probable cause without statement of qualification to recognize odor). We have implicitly recognized the qualifications of Border Patrol agents to detect the odor of marijuana in a multitude of cases to establish probable cause. *See, e. g., United States v. Garza*, 547 F.2d 1234 (5th Cir. 1977). We should allow the magistrate to do the same here.