UNITED STATES of America,
Plaintiff-Appellee,

v.

Mark Bruce ASTROFF and Robert
Duane Steverson,
Defendants-Appellants.

No. 76–2289.

United States Court of Appeals,
Fifth Circuit.

Aug. 11, 1978.

Martin G. Weinberg, James W. Lawson, Boston, Mass., for defendants-appellants.

J. A. Canales, U. S. Atty., Mary L. Sinderson, George A. Kelt, Jr., Donald L. Lambright, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, and THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, SIMPSON,* MORGAN, CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN and VANCE, Circuit Judges.

AINSWORTH, Circuit Judge:

This case concerns the validity of a search warrant which was issued pursuant to an affidavit containing a negligent misrepresentation necessary to the establishment of probable cause. Defendants-appellants Mark Bruce Astroff and Robert Duane Steverson were convicted by a jury of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and for conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846. Each defendant received three-year concurrent sentences to be followed by two years of concurrent special parole. In *United States v. Astroff*, 5 Cir., 1977, 556 F.2d 1369, a panel of this Court, with one judge dissenting, reversed the convictions after concluding that the Government had seized four suitcases filled with the marijuana involved here from the defendants in violation of the fourth amendment. A majority of the panel held that the search warrant allowing the seizure of these suitcases was issued pursuant to a facially sufficient affidavit that contained negligent misrepresentations of facts material to the establishment of probable cause, and further that such negligent misrepresentations rendered the warrant invalid because the affidavit would not establish probable cause without the misrepresentations. We took the case

* Judge Bryan Simpson did not participate in the decision in this case.

en banc and heard oral argument. We vacate the panel's opinion and affirm the convictions.

The circumstances leading to the defendants' arrests and convictions began on October 18, 1974, when a black male in Tucson, Arizona purchased a one-way train ticket from Tucson to New York City for two people named on the ticket as "Mr. M. Astroff and one adult." Later the ticket clerk attempted to verify the telephone number given by the black male and found it to be fictitious. On October 19, defendants Astroff and Steverson presented this ticket to the ticket clerk, Barry Sharp, at the Southern Pacific Railway Station in Tucson and readied themselves to board the 8:45 a. m. train to New York. They checked four green suitcases. The suitcases were too heavy for Sharp to lift alone, so he asked W. A. Whisnant, a baggageman, for assistance. While placing the suitcases onto a loading cart, Sharp noticed a "funny odor" emanating from them. Whisnant, who had smelled marijuana on prior occasions, identified the odor as that of marijuana. Miguel Cruz, the assistant special agent for the Southern Pacific Railroad, was called and, after smelling the seams of the four suitcases, concluded that the odor was from marijuana. Cruz notified the Tucson police, and Officer Edward Bernal of the narcotics section came to the station, arriving approximately ten minutes before the train to New York was scheduled to depart. Bernal smelled the suitcases and also detected the odor of marijuana, so, in the words of the district court, he "applied pressure to the corners of each suitcase, thereby opening the seam a fraction of an inch" in order to get a better smell. It was not, however, large enough to see inside. After receiving a stronger smell of marijuana, Bernal marked the four bags with his initials.

Cruz and Bernal contacted J. B. Frazier, the special agent for the Southern Pacific Railroad, and informed him of the situation. Cruz, Bernal, and Frazier discussed the route the train would take and, because the ticket had been purchased by a third party, the possibility that another person in addition to Astroff and Steverson was involved. It was decided to "let the people and the suitcases go on through." Frazier then contacted the ticket office and obtained the defendants' ticket number and the baggage numbers of their luggage, as well as a description of the luggage. From information given by Whisnant, Frazier determined the total weight of the four bags to be approximately 150 pounds. He next telephoned DEA Agent Daniel Wedeman in Houston, Texas and advised him of the situation. Frazier told Wedeman that Bernal and Cruz had smelled the odor of marijuana coming from the suitcases and gave Wedeman the defendants' descriptions, the ticket and baggage numbers, and a description and estimated weight of the suitcases. Frazier also told Wedeman that the train would be stopping in Houston. With this information Wedeman appeared before a magistrate in Houston and presented the following affidavit for a warrant to search the suitcases:

On October 19, 1974, Special Agent Daniel H. Wedeman, Drug Enforcement Administration, Houston, Texas, had a telephonic conversation with Mr. J. B. Frazier, Division Special Agent for Southern Railroad Police Department. During the conversation, Mr. Frazier stated that on October 18, 1974, two white males of a hyppie-type appearance had purchased and made reservations for a ticket (for $535.00) for travel from Tucson, Arizona, to New York and left their telephone number for confirmation of travel ticket.

Mr. Frazier stated efforts by the ticket agent to call the aforementioned telephone number proved to be negative in that it turned out to be a ficticious [sic] number. (See attachment)

Mr. Frazier stated that, due to the ficticious [sic] telephone number, the ticket agent was suspicious of the two prospective travelers and, therefore, noted that it was two different people who claimed the aforementioned ticket (# 030265699) for travel to New York on October 19, 1974. On October 19, 1974, it was noted that the two claimants were a white male

about 5'10″ tall with light curly hair and weighed about 200 pounds, and a negro male with an afro hair cut, wearing a brown leather coat and brown high heel shoes.

Mr. Frazier stated that the two latter claimants checked in their baggage (four large green suitcases) and received baggage claim check numbers 470689, 470690, 470691, and 470692. Further, when the baggage handler took possession of the four suitcases, he smelled a strong odor coming from the suitcases. The baggage handler subsequently notified Mike Cruz, investigator for the Southern Pacific Railroad, of the aforementioned transactions. Mr. Cruz, in turn, notified Detective Ed Bernal of the Tucson, Arizona, Police Department.

Mr. Frazier stated that inspection of the four (4) suitcases by the two investigators, revealed a green vegetable substance which appeared to be about one hundred and fifty pounds (150) of marijuana. Due to a time element involved, the two investigators allowed the four (4) suitcases to leave via the baggage car of the train enroute to New York.

Mr. Frazier stated that the train, 0230, would be arriving in Houston, Texas, on October 20, 1974, at about 10:10 a. m., and that the two "ticket claimants" were occupying compartments five (5) and seven (7) of the aforementioned train.

The warrant was issued, the four suitcases were searched pursuant thereto when the train arrived in Houston on October 20, marijuana was found, and Astroff and Steverson were arrested.

Before their trial the defendants moved to suppress the admission into evidence of the marijuana. The district court found that the statement in the affidavit that "inspection revealed a green vegetable substance which appeared to be about one hundred and fifty pounds of marijuana" was a material misrepresentation, because it suggested inspection by sight rather than by smell, and neither Cruz nor Bernal had actually seen the marijuana. The court concluded that it need not invalidate the war-

rant, however, because the material misrepresentation in the warrant affidavit was not intentional or reckless, but only negligent. A panel of this Court agreed that the misstatement was only negligent, as does this Court sitting en banc, but a majority of the panel nevertheless reversed the district court, holding that

> such a statement should play no part in establishing probable cause upon judicial review of a search warrant affidavit. The critical inquiry is not whether a misrepresentation is negligent or intentional, but whether it is material.

*United States v. Astroff, supra,* 556 F.2d at 1371.

We hold, however, that the district court's conclusion was correct and that the warrant was not invalid. In *Franks v. Delaware,* —— U.S. ——, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court recently addressed the "important and longstanding issue" of whether "a defendant in a criminal proceeding ever [has] the right, under the Fourth and Fourteenth Amendments, subsequent to the *ex parte* issuance of a search warrant, to challenge the truthfulness of factual statements made in an affidavit supporting the warrant." —— U.S. at ——, 98 S.Ct. at 2676. The Court answered this question in the affirmative, holding "that, where the defendant makes a substantial preliminary showing that a false statement *knowingly and intentionally, or with reckless disregard for the truth,* was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* (emphasis added) In the next to final paragraph of the opinion the Court further defined its holding:

> In sum, and to repeat with some embellishment what we stated at the beginning of this opinion: There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported

**136**

by more than a mere desire to cross-examine. *There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.* They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. *Allegations of negligence or innocent mistake are insufficient.* The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth Amendment, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

*Id.* at ——, 98 S.Ct. at 2685 (emphasis added) (footnote omitted)

In the instant case, it is clear that only a negligent misrepresentation was involved. Under *Franks,* therefore, the search warrant was valid, and even a hearing to consider allegations of negligent misrepresentation was unnecessary.[1] Accordingly, the defendants' convictions are

AFFIRMED.

---

1. Note also that the rule in other circuits, even before *Franks,* was that an intentional misrepresentation in a warrant affidavit would per se invalidate the warrant, but that an unintentional misrepresentation would invalidate the warrant only if the misrepresentation was reckless and necessary to the establishment of probable cause. Mere negligent or innocent misrepresentations, even if necessary to establish probable cause, would not invalidate a warrant. *E. g., United States v. Hole,* 9 Cir., 1977, 564 F.2d 298, 301–02; *United States v. Collins,* 8 Cir., 1976, 549 F.2d 557, 561, *cert. denied,* 431 U.S. 940, 97 S.Ct. 2656, 53 L.Ed.2d 259 (1977); *United States v. Lee,* 4 Cir., 540 F.2d 1205, 1209, *cert. denied,* 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976); *United States v. Rosenbarger,* 6 Cir., 1976, 536 F.2d 715, 720, *cert. denied,* 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977); *United States v. Carmichael,* 7 Cir., 1973, 489 F.2d 983 (en banc). *But see United States v. Gonzalez,* 2 Cir., 1973, 488 F.2d 833, 837; *United States v. Harwood,* 10 Cir., 1972, 470 F.2d 322, 324–25.