**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Pete YOUNG BUFFALO, a/k/a Peter Brent Zauner, Defendant-Appellant.**

No. 78–1079.

United States Court of Appeals, Ninth Circuit.

Jan. 11, 1979.

As Amended on Denial of Rehearing and Rehearing En Banc March 12, 1979.

Susan F. Mandiberg (argued), Rives, Bonyhadi & Smith, Portland, Or., for defendant-appellant.

Jack C. Wong, Asst. U. S. Atty. (argued), Portland, Or., for plaintiff-appellee.

Before WRIGHT and GOODWIN, Circuit Judges, and JAMESON, District Judge.*

* Senior District Judge for the District of Montana.

EUGENE A. WRIGHT, Circuit Judge:

Young Buffalo[1] was convicted by a jury on a fifteen count indictment[2] charging him with seven bank robberies (18 U.S.C. § 2113(a)), seven counts of using a firearm in the commission of a felony (18 U.S.C. § 924(a)), and one count of being a felon in possession of a firearm (18 U.S.C. App. § 1202(a)(1)).

He seeks reversal of his conviction because much of the evidence used to convict him was the product of a search authorized by a warrant issued on the strength of an affidavit containing material misstatements by the affiant. He also contends that, because FBI agents destroyed notes of interviews with witnesses to the first bank robbery, those witnesses should have been barred from testifying. Finally, he argues that admission of lay opinion on his resemblance to a photograph of the bank robber constitutes reversible error.

We are not persuaded that the court erred on any issue raised by appellant and we affirm the conviction.

### FACTS

Between December 7, 1976, and April 21, 1977, seven bank robberies occurred in or around Portland, Oregon. In each the perpetrator wore a ski mask or a nylon stocking over his face, coveralls or other loose fitting clothing, and in most cases, gloves. One branch bank was robbed twice and a witness to the two robberies believed that one person had committed both.

After the first robbery, the robber fled on foot. An FBI agent gave chase in the direction the robber had taken. He found appellant in a car in a nearby residential area and questioned him. Appellant stated he had seen someone matching the robber's description running up the street.[3] He gave the agent his correct name and address for future use.

Witnesses to the several robberies described the culprit as a stocky white male, but the details of their descriptions varied. FBI special agent Michael Sanders prepared an affidavit for a warrant to search appellant's apartment, compiling a description of the robber from the statements of many witnesses. When the warrant was issued, agents searched the apartment, and found a bag containing green coveralls, a green and yellow ski mask, a pillowcase, gloves and a gun. Witnesses testified that these items resembled ones used by the robber. Agents also found cartridges in appellant's apartment.

### THE AFFIDAVIT FOR SEARCH WARRANT

Appellant's main contention is that, in composing the affidavit for the search warrant, agent Sanders intentionally made material misstatements calculated to deceive the magistrate into believing that there was probable cause to issue the warrant.

The affidavit described appellant as "an Indian male, born July 2, 1949, 5'7", 200 lbs., stocky build, dark brown or black hair, dark or olive complexion . . .." According to appellant, Sanders repeatedly failed to include the full range of heights and weights assigned to the robber by witnesses and added descriptive material not supplied by them in order to make their descriptions conform to that of appellant.

With respect to the first robbery Sanders stated: "Witnesses . . . described the robber as a white or Indian male . . . 5'8" to 5'10" . . . ." In fact, no

---

1. Appellant was indicted as Peter Brant Zauner. After sentencing he changed his name to Pete Young Buffalo in state court proceedings.

2. Appellant was also indicted for a sixteenth count of possession of a sawed-off shotgun in violation of 26 U.S.C. §§ 5861(d) and 5871. This count was severed on appellant's motion and dismissed on the government's motion.

3. Agent Cook continued to run in the direction indicated by appellant and, within a block and a half, encountered a parked police car. The occupant of the car had seen no one coming that way. Other agents then joined Cook in conducting an extensive unsuccessful grid search of the area.

witness described the robber as Indian [3a] and the range of heights given was 5′10″ to 5′11″. Appellant cites other examples of reporting incorrect height and weight descriptions, adding information not supplied by witnesses, and omitting descriptive information which did not fit the physical characteristics of appellant.

Appellant asserts that, in addition to these intentional misrepresentations, the affidavit contained reckless misrepresentations of material facts. Sanders included information that appellant owned a Honda motorcycle similar to one used by the robber to flee the scene of one robbery and that, about the time of another robbery, appellant had rented a white over maroon 1976 AMC Pacer similar to one used by the robber. According to appellant, routine checking by Sanders would have revealed that appellant's motorcycle had been destroyed before the robberies and that his rented Pacer was actually maroon over white.

The district judge denied appellant's pretrial motion to suppress the fruits of the apartment search. He said that an affidavit for search warrant must be invalidated if it contains any misrepresentation of a material fact or "any intentional misrepresentation by a Government agent whether material or not." He found that the inaccuracies in Sanders' affidavit were not intentional but were the result of Sanders' attempt to synthesize a large volume of descriptive information.[4] He expressly found that the inaccuracies were not material because even without them there was enough information to support the issuance of the warrant. Appellant contests both findings.

In denying the motion, the trial judge relied upon *United States v. Damitz*, 495 F.2d 50 (9th Cir. 1974), and *United States v. Thomas*, 489 F.2d 664 (5th Cir. 1973), *cert. denied*, 423 U.S. 844, 96 S.Ct. 79, 46 L.Ed.2d 64 (1975). After the case was tried, the Supreme Court decided *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In *Franks*, the Court ruled that criminal defendants could challenge the validity of search warrants based on affidavits containing statements that are deliberately false or made with reckless disregard for the truth.

 The test for determining whether a defendant is entitled to a hearing to examine the content of the warrant affidavit is two-pronged. First, he or she must make a "substantial preliminary showing," including allegations of "deliberate falsehood or of reckless disregard for the truth," supported by an offer of proof.

Second, the court must determine if the challenged material is necessary to a finding of probable cause. If these two requirements are met, the defendant is entitled to a hearing. 98 S.Ct. at 2684–85. If, at the hearing, the defendant establishes perjury or reckless disregard and excision of the challenged matter leaves the affidavit with insufficient content to establish probable cause, the warrant must be voided.

---

**3a.** Although no witness explicitly described the robber as Indian, Sanders explained that his statements in the affidavit were based upon the fact that two witnesses selected appellant's picture from a photo lineup. Sanders knew appellant was Indian and apparently reasoned that the witnesses, in saying that the robber looked like the picture of appellant, were identifying the robber as Indian.

On this point, the case is similar to *United States v. Prewitt*, 534 F.2d 200 (9th Cir. 1976), in which the affiant officer stated that he had checked the registration of a car being used to transport unregistered firearms and discovered it was registered to Robin Lin Prewitt, the defendant. In fact it was registered to Sky Leaf Prewitt. The inaccuracy arose because the affidavit contained:

> the statement of a conclusion based upon two omitted facts: that the registration was in the name of Sky Leaf Prewitt and that [the officer] knew that Prewitt was known as "Sky." A layman's error of this kind is not intentional misrepresentation.

534 F.2d at 202. *Accord United States v. Thomas*, 489 F.2d 664 (5th Cir. 1973) (affidavit contained conclusions based on omitted facts).

**4.** The affidavit ran to seven single-spaced legal-sized pages and was extremely detailed. The record contains 23 separate statements by witnesses to the seven robberies from which Sanders derived his composites.

■ The *Franks* test supplants the precedent relied upon below. In *Thomas,* the court held that "there would be a sufficient basis for invalidating a search warrant if the error was intentional, even though immaterial to the showing of probable cause." 489 F.2d at 671.[5] *Franks* establishes that even deliberate falsehoods must be material before they can invalidate a warrant.

At the pretrial hearing on the motion to suppress, the government moved initially that appellant not be granted an evidentiary hearing on the question of the validity of the affidavit until he had made "an initial showing of falsehood." The court denied the motion and granted the hearing.

Because appellant had a full evidentiary hearing in the district court on whether the misstatements in the affidavit were material and made with intent to deceive, our task on appeal is to determine whether the court applied the proper legal standard, in light of *Franks,* and whether its findings of fact were clearly erroneous. *Cf. United States v. Goldberg,* 582 F.2d 483, 486 (9th Cir. 1978).

*Deliberate Falsehoods and Reckless Misstatements.*

Appellant contends that Sanders' affidavit contains both deliberate falsehoods and statements made with reckless disregard for the truth.

■ The allegedly reckless statements concern appellant's ownership of a motorcycle and the description of the car he rented prior to one robbery. Appellant asserts that, although Sanders knew the motorcycle had been in an accident before the robbery, he undertook no further investigation which would have revealed that it had been destroyed.[6] Likewise, additional checking with the rental agency would have revealed that the rental car was maroon over white, not the reverse.[7]

Even if we were to find that the information possessed by Sanders was enough to create a duty of further inquiry, these assertions at best raise the possibility of negligence on his part. The Court in *Franks* made it clear that "[a]llegations of negligence or innocent mistake are insufficient" to meet the first leg of the test to determine whether a hearing is required. 98 S.Ct. at 2685.

This circuit followed *Franks* in deciding that innocent misrepresentations by the affiant, even if material, would not vitiate a search warrant. *United States v. Botero,* 589 F.2d 430 (9th Cir. 1978). *United States v. Smith,* 588 F.2d 737, 740 (9th Cir. 1978). *Cf. United States v. Hole,* 564 F.2d 298 (9th Cir. 1977). Sanders' misstatements do not reach the level of recklessness necessary to establish a constitutional violation.

■ The question whether the affidavit contains deliberate falsehoods is more troublesome. In this case, as the trial judge noted, Sanders was required to sift through a large body of information to synthesize a description of the robber. The process necessarily involved omission and an element

5. *United States v. Damitz,* 495 F.2d 50 (9th Cir. 1974), also relied upon by the trial judge, is not directly on point. In *Damitz,* the defendant challenged the sufficiency of an affidavit containing misrepresentations by an informer, not by an affiant government officer. The court held that third party misstatements relied upon in good faith by the government would not invalidate a search warrant. Furthermore, it held that third party misstatements must be material in order to invalidate the warrant.

6. Sanders' affidavit said that he had checked with appellant's parole officer and discovered that appellant was the registered owner of a 1974 450 cc. Honda motorcycle with an Oregon license. He confirmed the information with the Oregon Motor Vehicles Division. He also reported that a neighbor and appellant's apartment manager stated that they had seen appellant riding a dark-colored motorcycle.

Appellant asserts that, because Sanders learned that the motorcycle had been in an accident, he should have inquired of an insurance company or appellant's wife about its condition.

Sanders' knowledge of the motorcycle accident raised no duty to inquire further. Appellant's ownership of the motorcycle was just one of many facts linking him to the robberies and failure to investigate all details showed no reckless disregard for the truth.

7. Appellant asserts that Sanders should have actually viewed the rented car.

of distortion, but that fact alone does not establish either deliberate falsehood or reckless disregard for the truth.

In *Franks*, the Court did not spell out what was meant by "deliberate falsehood" and "reckless disregard for the truth." It did explain, however, what it meant by a truthful factual showing of probable cause.

> This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

98 S.Ct. at 2681.

In this case, the trial judge allowed appellant to examine Sanders regarding the process he followed in composing the affidavit. Appellant was also allowed to call other witnesses to testify about discrepancies between witnesses' statements as recorded on the "302" reports by FBI agents and the statements Sanders attributed to the witnesses in the affidavit. The judge reviewed both the reports and the affidavit.

After hearing the arguments and weighing the evidence, the judge concluded that "none of this constitutes an intentional misstatement." He noted that "any reduction of the overall mass of the 302 reports may result in slight differences between total information of the witnesses and the summarized versions composed by the affiant." He found, however, that those differences were de minimis because Sanders was required to synthesize "a virtual mound of material" from seven different robberies.[8]

In reviewing this finding of fact, we must consider that "it may well have depended

upon nuances of testimony and demeanor of witnesses." *Campbell v. United States*, 373 U.S. 487, 493, 83 S.Ct. 1356, 1361, 10 L.Ed.2d 501 (1963). Here, Sanders' credibility was critical and the trial judge was in a better position to assess it. We cannot say that his finding that the misstatements were unintentional was clearly erroneous, nor can we say that the misstatements which resulted from Sanders' synthesis of the available information manifested a reckless disregard for the truth.

*Materiality.*

■ The second step in the *Franks* test is to determine whether the affidavit, with the challenged material excised, would support a finding of probable cause. The judge found that it would and we agree.

In evaluating the sufficiency of an affidavit for a search warrant, a reviewing court must give " 'great deference' to the decision of the magistrate who concludes that such a showing has been made." *United States v. Fried*, 576 F.2d 787, 791 (9th Cir.), *cert. denied*, —— U.S. ——, 99 S.Ct. 255, 58 L.Ed.2d 241 (1978), *quoting Spinelli v. United States*, 393 U.S. 410 at 419, 89 S.Ct. 584, 21 L.Ed.2d 637. Affidavits should be "interpreted by magistrates and courts in a common-sense and realistic manner." *United States v. Ventresca*, 380 U.S. 102, 108–09, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), *quoted in United States v. Baker*, 567 F.2d 924, 927 (9th Cir. 1978). "From the affidavit, the magistrate need only conclude that criminal activity is probably shown." *Fried*, 576 F.2d at 790, *citing Spinelli*, 393 U.S. at 419, 89 S.Ct. 584 and *United States v. Mulligan*, 488 F.2d 732, 736 (9th Cir. 1973), *cert. denied*, 417 U.S. 930, 94 S.Ct. 2640, 41 L.Ed.2d 233 (1974).

Here, the unchallenged statements of the witnesses support the conclusion that appellant's participation in the robberies was "probably shown." Most witnesses agreed

---

**8.** The judge added:

> We might have a different case here if there were only the first bank robbery alone or perhaps if we had only the last bank robbery alone. Then, in such a case the differential between the witnesses' statements and the

> composite might be so significant as to call for a conclusion that it became and was, in fact, an intentional misstatement. Such is not our case here.

Reporter's Transcript at 283.

that the robber was stocky with brown eyes and dark hair, a description that fits appellant. The witnesses with the best view described him as dark complexioned. One described him as possibly Samoan. Appellant is Indian. Two witnesses selected his picture from a photographic lineup [9] and identified him as resembling the robber. One of these witnesses had seen the robber before he donned the ski mask worn during the robbery. Appellant was within the age ranges ascribed to the robber.

The affidavit contained other unchallenged statements that tended to show appellant's probable involvement: that he was encountered by an FBI agent near the scene of the first robbery; that he owned a jacket similar to one worn by the robber; that he had been observed to wear shoes and sweatpants similar to those worn by the robber; that he had spent over $6,000 in cash between January and April of 1977, a period in which he did not appear to be employed and had little money in the bank; [10] and that one believed to be the robber was seen fleeing into an alleyway leading to appellant's residence following one robbery.

In addition, the information regarding appellant's ownership of a motorcycle established at least that he was familiar with motorcycles, as was the robber. Similarly, although the information regarding the rented car was not accurate in minute detail, the fact that appellant rented a maroon and white 1976 Pacer during the time in which the robber used a similar getaway car supports the inference that appellant could have been the robber.

This information, standing alone, was more than adequate to support a finding of probable cause to search the apartment.

The judge ruled correctly that any misstatements in the affidavit were not material.

## DESTRUCTION OF THE FBI NOTES

Appellant also contends that the trial judge should have imposed sanctions because FBI agents destroyed handwritten notes of interviews with witnesses to the first robbery. He relies on *United States v. Harris*, 543 F.2d 1247 (9th Cir. 1976), in which we held that FBI notes of interviews with prospective government witnesses or the accused must be preserved because they are discoverable under the Jencks Act, 18 U.S.C. § 3500, and Fed.R.Crim.Proc. 16. He asserts that one witness indicated that there were discrepancies between the handwritten notes and the typed versions and that his inability to review the notes hindered his cross-examination of witnesses to the first robbery and prejudiced his defense.

The district judge concluded that the destruction of the notes resulted from a time lag in disseminating the *Harris* ruling to FBI agents. He did not impose sanctions because he found that destruction was done in good faith and that there was no prejudice to appellant. Furthermore, he noted that suppression of the witnesses' testimony would be the only meaningful sanction, but believed suppression would be too harsh a remedy.

The agents destroyed only the interview notes relating to the first robbery. They preserved the notes for the other six. Counts 1 and 2 of the indictment related to the first robbery.

■ Under the concurrent sentence doctrine the court may, in its discretion, decline

---

9. Appellant moved before trial to suppress all evidence of photographic identification because the identification procedure was suggestive and the identifications were "tainted." The motion was denied.

On appeal, he states that the photo spreads were such that appellant's picture was the only possible choice. He does not raise this issue as a separate argument, nor does he supply authorities in support of his contention. We decline to address the issue.

10. Appellant points out that Sanders knew he was a student, but failed to note in the affidavit that appellant received $1,000 in financial aid between September 1976 and March 1977. Furthermore, he notes that his parole officer knew he had received an $800 insurance settlement in December 1977, a fact also omitted from the affidavit. He does not assert that Sanders knew of these funds, and, in any event, they fall short of accounting for $6,000 in cash.

to consider arguments relevant to only one count if the defendant has been sentenced to concurrent sentences and "the convictions which would not be examined will not entail adverse collateral legal consequences for the appellant." *United States v. Walls*, 577 F.2d 690, 699 (9th Cir.), *cert. denied*, —— U. S. ——, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978); *Benton v. Maryland*, 395 U.S. 784, 791, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

The sentence of 20 years on Count 1 runs concurrently with the sentences on Counts 5, 7, 9, 11, and 13. The sentence on Count 2 of five years runs concurrently with those on Counts 1, 4, 6, 8, 10, 12, and 14. There are no collateral legal consequences arising from Counts 1 and 2, and we need not consider appellant's arguments with respect to those counts.

## LAY OPINION PHOTOGRAPHIC IDENTIFICATION

■ The court allowed appellant's estranged wife and his probation officer to view bank surveillance photographs of the robber and to give their opinions about appellant's resemblance to the robber. Appellant protests that this was error because neither witness was an expert in photographic identification, the testimony usurped the function of the jury, and the identifications by those close to appellant were more prejudicial than probative (Fed. R.Evid. 403).

Under Fed.R.Evid. 701, lay testimony expressing an opinion is admissible if it is "limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." In *United States v. Butcher*, 557 F.2d 666 (9th Cir. 1977), this court held that the trial court's admission of opinion testimony by two police officers and the defendant's parole officer was not an abuse of discretion. We held, however, that the use of such testimony is not encouraged because the balance does not weigh heavily in favor of probative value over prejudicial effect.

Here, appellant's parole officer said he had seen him wearing a coat similar to one worn by the robber in one of the photographs and that the person pictured strongly resembled appellant because of similarities in height, weight, and appearance of the eyes. Appellant's wife testified that the coat was similar to one owned by him. She added that the person pictured resembled her husband.

Neither of these witnesses unqualifiedly identified appellant as the one in the photographs. On the other hand, witnesses to the robberies identified the appellant as resembling the robber. The testimony of the parole officer and the wife was both cumulative and somewhat equivocal. Even though they were allowed to make a comparison which the jurors could have made, admission of the testimony was not so prejudicial as to require reversal.

## CONCLUSION

We find that the trial court did not err in ruling on the sufficiency of the affidavit to establish probable cause or in admitting lay opinion testimony that appellant resembled the robber. We exercise our discretion under the concurrent sentence doctrine in declining to review appellant's argument regarding the destruction of FBI interview notes. The judgment of conviction is affirmed.