46 F.3d 1147
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
John Lee HODGE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gracie Lockette JOHNSON, Defendant-Appellant.
 Nos. 92-10730, 93-10003.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted: Dec. 12, 1994.*
Decided: Jan. 27, 1995.
 
 Before: WALLACE, Chief Circuit Judge, PREGERSON and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 John Lee Hodge and Gracie Lockette Johnson appeal their jury convictions. Both Hodge and Johnson were convicted of violating 18 U.S.C. Secs. 2113(a), (d) (armed bank robbery). Hodge was also convicted of violating 18 U.S.C. Sec. 924(c)(1), use of a firearm during a crime of violence. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 
 3
 This case involves two distinct challenges to Hodge and Johnson's convictions. Because the facts necessary to assess each claim are distinct, we recite them separately below.
 
 I. ADMISSION OF IDENTIFICATION TESTIMONY
 
 4
 Hodge asserts that the district court abused its discretion when it admitted the identification testimony of two different witnesses.
 
 A. Background
 
 5
 On June 25, 1991, the Bank of the West in Visalia, California was robbed by a black man and a black woman. The woman held a handgun on the bank employees while the man took money from the tellers. Hodge and Johnson were tried together for the crime.
 
 
 6
 The only issue at trial as to Hodge was whether or not he was the bank robber who wore a mask. The government introduced testimony from two witnesses, Mary Serrato and Joshua Hammond, to prove that Hodge was the man who robbed the bank.
 
 
 7
 Mary Serrato was working as a bank teller the day the bank was robbed. Serrato saw the perpetrator's uncovered face from a distance of twenty-five feet for a moment before he pulled his ski mask back down. She testified that the whole incident took only three or four minutes. A few days after the robbery, Serrato was unable to identify the male bank robber from a photographic line-up that included Hodge and five other black males. Serrato then testified at the trial eight months after the incident. In court, over Hodge's objection, Serrato identified Hodge, the only black man in the courtroom, as the bank robber.
 
 
 8
 Joshua Hammond, an acquaintance of Hodge, identified Hodge as the man depicted in a photograph taken on the day of the robbery by the automatic teller machine outside the front door of the bank. The photograph was taken moments before the male bank robber entered the bank. It shows a black man holding what the government claims is a mask in his left hand. Hammond testified that he knew Hodge, but was not a close social friend, and that they had not spent much time together. Hammond stated that although the photograph was "blurry," he could tell by the build of the man in the photograph that it was Hodge. (E.R. at 49) Hammond admitted that he had seen the photograph before trial when an FBI agent looking for Hodge showed the photograph to him.
 
 B. Analysis
 
 9
 The admission of in-court identification testimony is reviewed for abuse of discretion. United States v. Gregory, 891 F.2d 732, 734 (9th Cir. 1989).
 
 1. Serrato testimony
 
 10
 Hodge contends that Serrato's in-court identification was impermissibly suggestive. We apply a two-part test to determine the admissibility of identification testimony.
 
 
 11
 First, we must determine whether the identification procedure used was impermissibly suggestive. In United States v. Domina, 784 F.2d 1361, 1368 (9th Cir. 1986), cert. denied, 479 U.S. 1038 (1987), we stated that "there can be little doubt that the initial in-court identification is suggestive." However, in that same opinion, we noted that the trial court may, in its discretion, allow the defendant the chance to mitigate the suggestiveness of an initial in-court identification, by permitting, for instance, an in-court line-up or by allowing the defendant to sit elsewhere in the courtroom. Id. at 1368-69. Hodge did not make any such requests to the court. Moreover, we stated in United States v. Valenzuela, 722 F.2d 1431 (9th Cir. 1983), that the defendant's interests in such a situation can "normally [be] vindicated through the adversarial process of cross-examination." Id. at 1433 (citations omitted). In this case, Hodge cross-examined Serrato, and had a full opportunity to bring out the fact that she had previously failed to identify him in the photographic line-up.
 
 
 12
 Since we find that the in-court identification was not impermissibly suggestive, we do not need to reach the second part of the analysis, which requires us to apply the five factors set out by the Supreme Court in Neil v. Biggers, 409 U.S. 188, 199-200 (1972), to see whether suggestive testimony was nonetheless reliable. Thus we find no error in the admission of Serrato's in-court identification.
 
 2. Hammond testimony
 
 13
 Hodge contends that the district court abused its discretion by allowing Hammond to testify that Hodge was the robber depicted in the surveillance camera photograph. Lay opinion testimony is admissible, under Federal Rule of Evidence 701, if it is "'limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."' United States v. Langford, 802 F.2d 1176, 1179 (9th Cir.), cert. denied, 483 U.S. 1008 (1986) (quoting United States v. Young Buffalo, 591 F.2d 506, 513 (9th Cir.), cert. denied, 441 U.S. 950 (1979)).
 
 
 14
 In this case, Hammond claimed that he recognized Hodge as the bank robber in the photograph because of his build. Not knowing how closely the two were acquainted makes it difficult to determine whether Hammond's opinion was rationally based on his past perceptions. In Langford, 802 F.2d at 1179, one witness had met the defendant fifty times, while another had known the defendant most of his life. Likewise in United States v. Miranda, 986 F.2d 1283, 1285 (9th Cir.), cert. denied, 113 S. Ct. 2393 (1993), the two witnesses who identified the defendant were "longtime acquaintances." In contrast, Hammond testified that he had not spent a lot of time with Hodge and that they did not socialize together.
 
 
 15
 In addition, in Langford, 802 F.2d at 1179, and Miranda, 986 F.2d at 1285, the witnesses' testimony was "particularly valuable" because they were able to make the identification based on their familiarity with characteristics of the defendant which the jury could not immediately observe at trial. Here, however, Hodge's "build" was obvious to the jury.
 
 
 16
 Even if Hammond's identification of Hodge was not rationally based on his past perceptions or helpful to the jury, it is clear that the error was harmless. As the district court pointed out, the jury could look at the photograph and identify Hodge, without even considering Hammond's testimony. Therefore we deny Hodge's claim of reversible error regarding the admission of Hammond's testimony.
 
 II. CONSTITUTIONALITY OF THE VENIRE
 A. Background
 
 17
 Prior to their trial, Hodge and Johnson filed a motion to dismiss the superseding indictment. They argued that the use of voter registration lists as the sole source of potential grand and petit jurors violated the Equal Protection Clause, the Sixth Amendment guarantee that a jury be composed of a fair cross-section of the community, and the statutory requirements for jury selection under 28 U.S.C. Secs. 1861-1863. Hodge and Johnson also contended that the Jury Commissioner had failed to take any steps to remedy the underrepresentation of cognizable groups in the jury pool.
 
 
 18
 On the first day of trial, the court held two hearings on the defendants' motions to dismiss. The district court denied the motions at each hearing on the ground that the grand and petit juries in this case were fairly representative of the community. Trial commenced that day and the defendants were convicted on all counts in the superseding indictment.
 
 
 19
 Two months later, Hodge and Johnson moved for reconsideration of the motion to dismiss and asked to produce expert testimony to the court. The district court then held two evidentiary hearings on the motion. The parties subsequently submitted final briefs on the issues raised at the two hearings. The district court then denied Hodge and Johson's motion to dismiss, and sentenced the defendants at two separate sentencing hearings.
 
 B. Analysis
 
 20
 In denying the motions to dismiss, the district court stated that it was dissatisfied with the data offered by both the government and the defense experts. The district court found that none of the experts gave the court sufficient information about the number of jury-eligible African-American and Hispanic adults within the Fresno service area of the Eastern District of California. (E.R. at 24) In its memorandum decision, the district court also presented information about the number of Hispanics and African Americans in the venire that showed up for duty for the grand jury that indicted the defendants, and for the petit jury that convicted the defendants.
 
 
 21
 We will not disturb the factual findings of the district court that the data before it was insufficient to make out either a Sixth Amendment/statutory claim, or an equal protection claim.
 
 
 22
 We turn now to Hodge and Johnson's particular claims of error.
 
 1. Sixth Amendment claim
 
 23
 Hodge and Johnson argue that the district court erred when it looked to the racial composition of the pools from which the grand and petit juries were drawn in this case, instead of examining the racial composition of the master jury source list (or "wheel"). We need not reach this issue. The defendants failed to submit adequate data to meet the second prong of the Duren test.[1] Without the proper data, there is no way that the court could have completed the appropriate analysis, let alone found for the defendants.
 
 2. Equal protection
 
 24
 Hodge and Johnson's next argument is that the court improperly denied their equal protection challenge. This claim must fail for a number of reasons.
 
 
 25
 First, nowhere in the record do Hodge or Johnson allege that they are Hispanic. To make out a prima facie claim of an equal protection violation based on the racial composition of the jury, the defendant must be a member of the group which he or she claims is underrepresented. Castaneda v. Partida, 430 U.S. 482, 494 (1977).[2] Thus, Hodge and Johnson's equal protection claim is valid only to the extent that it alleges underrepresentation of African-Americans.
 
 
 26
 Johnson argues in her brief that the court erred when it refused her request to enter evidence about the racial composition in a number of other individual venires over a period of time. However, the evidence offered by Hodge and Johnson clearly would not have been sufficient to establish an equal protection violation. Thus, even if the district court erred in refusing to admit it, the error was certainly harmless.
 
 
 27
 Finally, the defendants claim that the court erred when it refused Johnson's attempt to introduce evidence of the Jury Commissioner's knowledge that the jury source list underrepresented Hispanics and African-Americans. The court denied the request, ruling that the evidence was irrelevant.
 
 
 28
 This evidence as to the Jury Commissioner's knowledge is irrelevant to the extent that it relates to Hispanics. As stated above, Hodge and Johnson's equal protection claim is limited to the underrepresentation of African-Americans. Moreover, the testimony in question goes to the issue of discriminatory intent, the third prong of the Castaneda test. But the court found that it did not have sufficient data to meet the second prong of the Castaneda test, which requires a showing of substantial underrepresentation. Since the defendants did not meet the second prong of the equal protection test, the district court's refusal to introduce evidence concerning the third prong was at most harmless error.
 
 III. CONCLUSION
 
 29
 We find that the district court did not abuse its discretion when it allowed bank teller Mary Serrato to identify Hodge in court, nor did the court commit reversible error when it allowed in Joshua Hammond's identification of Hodge in the surveillance photograph. Further, the district court properly denied Hodge and Johnson's motion to dismiss the indictment based on the jury selection practices in the Fresno division of the Eastern District of California, when it found the data presented by the appellants was insufficient to support their claims.
 
 
 30
 AFFIRMED.
 
 
 
 *
 The panel unanimously found United States v. Johnson suitable for decision without oral argument. Fed. R. App. P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 In Duren v. Missouri, 439 U.S. 357 (1979), the Supreme Court held that to establish a prima facie violation of the Sixth Amendment's fair cross-section requirement, a defendant must show: (1) the group alleged to be excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process. Duren, 439 U.S. at 364
 
 
 [2]
 To make out a prima facie equal protection violation when challenging the jury selection process, a defendant must demonstrate that: (1) a cognizable group, of which he is a member; (2) has been underrepresented over a significant period of time; and (3) that the selection procedure is susceptible to abuse or is not racially neutral. Castaneda, 430 U.S. at 494